IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 3, 2018

## BRENT CHRISTOPHER DISHON v. LISA RENEE DISHON

**Appeal from the Chancery Court for Coffee County**
**No. 2014-CV-296    L. Craig Johnson, Judge**

_____

### No. M2017-01378-COA-R3-CV

_____

This appeal arose from a divorce action filed by the husband.  The parties entered into a mediation agreement in December 2014, wherein the parties agreed, *inter alia*, that the husband would pay to the wife $1,200 per month in alimony, that the husband's alimony obligation would cease if the wife were cohabitating with a person of the opposite sex, and that the wife would be designated as the primary residential parent for the parties' minor child.  Following execution of the mediation agreement, the husband's employment hours were decreased by his employer.  The wife subsequently filed a "Motion to Restore Payment Agreement," in which she alleged that the husband had failed to adhere to his financial responsibilities pursuant to the mediation agreement.  The husband thereafter filed a response to the wife's motion, alleging that a material change in circumstance had occurred subsequent to the mediation agreement.  The trial court entered a judgment on February 25, 2016, enforcing the mediation agreement but determining, due to the husband's decrease in income, that a material change in circumstance had occurred since the mediation agreement was entered into by the parties.  The trial court further found that the wife had been cohabitating with a person of the opposite sex.  Nonetheless, the trial court determined that the wife remained the economically disadvantaged spouse following the divorce and reduced the husband's alimony responsibility to $500 per month.  The trial court further determined that it was in the best interest of the child for the wife to be the primary residential parent of the child.  The husband subsequently filed a motion to alter or amend the trial court's judgment and a motion to terminate his alimony obligation, both of which were denied by the trial court.  Husband timely appealed.  Having determined that the trial court erred by failing to cease Husband's alimony responsibility, in compliance with the enforced mediation agreement, upon its finding that the wife was cohabitating with a person of the opposite sex, we reverse the alimony award.  We affirm the remaining aspects of the trial court's judgment.  Because the husband's payment history regarding alimony is unclear from the record, we hereby remand for a determination by the trial court regarding

whether Husband owes Wife alimony incurred prior to February 25, 2016, or whether Husband is owed reimbursement of alimony paid past February 25, 2016.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Reversed in Part; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which ANDY D. BENNETT, J., and J. STEVEN STAFFORD, P.J., W.S., joined.

Randall W. Morrison, Tullahoma, Tennessee, for the appellant, Brent Christopher Dishon.

Lisa Renee Dishon, Tullahoma, Tennessee, Pro Se.

**OPINION**

I. Factual and Procedural Background

The parties were married on August 18, 2003, and they had one child together, G.D. ("the Child"), who was eleven years old at the time of trial in January 2016. On September 22, 2014, the plaintiff, Brent Christopher Dishon ("Husband"), filed a complaint seeking a divorce from the defendant, Lisa Renee Dishon ("Wife"). The record reflects that the parties had attended mediation in December 2014 and reached an agreement. The mediation agreement, in its entirety, provided as follows:

1.    [Wife] is primary parent. Standard visitation with [Husband] receiving every other weekend and every Thursday evening from 6 - 8:30 pm.

2.    Parties shall alternate holidays.

3.    Parties shall each receive 2 weeks in the summer.

4.    Parties agree that the marital residence shall be placed for sale immediately. If the house doesn't sell by July 1st, house shall be sold by auction within 30 days. Husband shall continue to pay monthly expenses he's currently paying until July 1, 2015.

5.    Parties shall equally split any debt on the home and/or any equity.

6.    Child support shall be calculated at $1000$^{00}$ per month beginning

- 2 -

July 1, 2015.

7. Beginning July 1, 2015, husband shall pay alimony in the amount of $1200^{00}$ per month for a period of 42 months.

8. Joint decision making by each party.

9. Alimony payments shall cease upon Wife's remarriage or cohabitation with opposite sex.

10. Husband keeps 401k.

11. Husband assumes all debt from loan to Fisher Tool & Die.

12. Parties shall equally split IRS tax lien.

13. Husband receives den furniture (no TV), playstation, all garage (no mower), & personal belongings.

Both parties and their respective counsel signed the mediation agreement.

The trial court entered an order on July 2, 2015, granting a divorce on stipulated grounds pursuant to Tennessee Code Annotated § 36-4-129 (2017). All issues regarding spousal support, custody, child support, and division of marital property were reserved for further hearing. On August 13, 2015, Wife filed a motion, seeking to enforce the mediation agreement and alleging that Husband had not complied with the mediation agreement and had "intentionally suspended <u>all</u> obligations he was paying on except the mortgage." Husband filed a response to Wife's motion on August 14, 2015, requesting that the mediation agreement not be enforced because a material change in circumstance had developed since the parties entered into the agreement, which had rendered his performance of the contractual obligations "impossible."

The trial court conducted a hearing on January 29, 2016. During the hearing, Husband testified that he had left items at the marital home that were awarded to him, including several tools, pieces of equipment, and a vintage pickup truck. Husband presented a list of those items of property to be admitted into evidence. Husband further testified that the mediation agreement was impossible to perform because he was aware of some property disposed of by Wife during the pendency of the divorce action. Specifically, Husband alleged that Wife had disposed of welding equipment and a welding tank, which he valued at approximately $2,000 combined. Husband further testified that Wife had been cohabitating with her boyfriend, T.P., averring that she was allowing T.P. to stay at her home, she was staying at his home, and she and T.P. had

traveled out of town together overnight. Husband also claimed that he had experienced a decrease in his income and that he could no longer afford the alimony obligation to which he had agreed in the mediation agreement. According to Husband, his hours at work had been reduced by his employer because "of a contract loss at his place of employment." Husband submitted that the permanent parenting plan was no longer in the Child's best interest because the Child had been left alone while in Wife's care without food or supervision. Husband further related that the Child had been having difficulty arriving at school on time because of Wife's "failure to either get her child up on time or make arrangements for him to be taken to school . . . ." Furthermore, he averred that it was in the Child's best interest that he be designated the Child's primary residential parent.

Following the January 29, 2016 hearing, the trial court entered an order on February 25, 2016, enforcing the mediation agreement between the parties. The trial court determined, however, that "a significant and substantial change of circumstance" had occurred since the parties' execution of the mediation agreement, specifically finding that a modification of alimony was warranted because Husband's income had decreased substantially and Wife was cohabitating with a person of the opposite sex. Determining that Wife nonetheless remained economically disadvantaged and in need of rehabilitation, the trial court reduced Husband's spousal support payment to $500 monthly as rehabilitative alimony for a period of twenty-four months and ordered that Husband was relieved of paying for Wife's household expenses. The trial court also divided the marital assets, allocated the marital debts, and approved a permanent parenting plan regarding the Child, determining the parenting plan to be in the best interest of the Child. Additionally, the trial court awarded to Wife half of her attorney's fees. The trial court further determined that $350 would be subtracted from Wife's award of attorney's fees, representing the value of equipment that Wife had sold during the pendency of the proceedings. The trial court did not make a determination regarding the precise amount of attorney's fees awarded to Wife because the amount could not be ascertained at the time of trial.

Following entry of the trial court's February 25, 2016 order, Husband filed a "Motion to Alter and Amend Supplemental Order" on March 21, 2016. In his motion, Husband emphasized that the parties' mediation agreement was determined to be valid and enforceable by the trial court and that the parties "should be bound by the terms and conditions of said Mediation Agreement." Husband further highlighted the parties' agreement that Husband's alimony obligation would cease upon Wife's cohabitation with a person of the opposite sex. Additionally, Husband averred that Wife should have to reimburse him more than the $350 ordered by the trial court for the value of the equipment sold by Wife while the divorce proceeding was pending. Wife subsequently filed a response, contending that the trial court should not alter or amend its judgment.

The parties subsequently agreed to schedule the matter for hearing on May 16, 2016. Prior to that hearing, Husband filed a "Petition for Contempt/Replevin" on May 9, 2016, alleging, *inter alia*, that Wife had removed his property from the marital home, including tools, "the built-in cook stove and the built-in refrigerator" and that Wife had taken the Child's cellular telephone. As a remedy, Husband requested that the trial court order Wife to reimburse Husband for the fair market value of the items. Wife also filed a response to Husband's "Petition for Contempt/Replevin," denying that she sold or removed any items from the marital home except the refrigerator and stove, which she admitted to transferring to her new residence. She further stated that the original refrigerator, which was present when the home was purchased, remained in the home. Wife additionally addressed Husband's allegations that she obtained the Child's cellular telephone, acknowledging that she took the Child's telephone only once when he was grounded for one week.

Subsequently, Wife filed a motion to increase rehabilitative alimony on May 12, 2016, asserting that she had become unemployed and was in need of additional spousal support. In her motion, Wife further alleged that Husband was in contempt of court because he had only made one alimony payment since being ordered to pay by the trial court. Husband responded by filing a motion to terminate rehabilitative alimony on June 6, 2016, alleging that Wife and her paramour were "exclusively cohabitating with one another." He requested that the trial court cease his alimony obligation pursuant to the mediation agreement. In response, Wife contested the termination of her alimony payments because the trial court had found that she was cohabitating in the previous order when it modified the amount of alimony.

Husband subsequently filed a "Petition to Modify Permanent Parenting Plan/Petition for Contempt," alleging that the Child was "left alone, at all hours of the day and night, while at [Wife's] residence" and that Wife made "very little effort, if any, to ascertain whether the child ha[d] completed his homework and assigned studies." According to Husband, Wife's conduct in this regard had "worsened since the parties' divorce." Husband averred that he could provide stability for the Child and requested that he be designated as the primary residential parent. In response, Wife denied that a substantial and material change of circumstance had occurred to warrant modification of the permanent parenting plan.

Wife next filed a petition for contempt on September 23, 2016, alleging that Husband had not complied with his alimony obligation agreed upon in the mediation agreement because he had only made one alimony payment, specifically in February 2016. Wife further claimed that Husband had not paid half of her attorney's fees as previously ordered by the trial court. Wife also asserted that Husband and his current wife were living in the marital residence despite the fact that the marital property was to be sold pursuant to the mediated agreement. Husband responded to Wife's contempt

- 5 -

petition by admitting that he had only paid one alimony payment and had not paid half of Wife's attorney's fees as previously ordered by the trial court. In response to Wife's allegation that the marital home was not sold pursuant to the mediated agreement, Husband admitted that the home was not sold and that he and his wife were living in the home. He claimed, however, that the parties had agreed to Husband's purchase of the marital home.

On April 17, 2017, the trial court heard all of the motions presented by the parties since the previous hearing memorialized by the February 25, 2016 order. Upon consideration of Wife's motion to increase alimony and Husband's countervailing motion to terminate alimony, the trial court entered an order on June 12, 2017, determining that a material change in circumstance was not proven to warrant modification of Husband's spousal support obligation. Additionally, the trial court determined that Husband had failed to prove a material change in circumstance so as to modify the permanent parenting plan. The trial court further ordered that Husband could deduct $1,500 from his total alimony responsibility as "reimbursement for the stove, refrigerator, etc."

Husband filed a notice of appeal in this Court on July 7, 2017. This Court entered an order on October 19, 2017, determining that the trial court's order did not address all of the claims between the parties, "including the amount of attorney's fees awarded to the wife, the husband's motion to alter or amend, and both parties' motions requesting that the other party be held in contempt and punished accordingly." This Court afforded the parties sixty days to "either obtain from the trial court a final judgment disposing of the remaining issues and cause the same to be transmitted to this court in a certified supplemental record, or else show cause why the appeal should not be dismissed." On December 6, 2017, the trial court entered a "Supplemental Order and Statement of the Evidence," finding that "all other motions/petitions in controversy not listed and/or disposed of in the Court's Order of June [12], 2017, are denied/dismissed for failure to carry the requisite burden." The trial court noted in the order that "[t]he amount of attorney fees awarded to [Wife] cannot be determined at this time because the attorney withdrew from the case and has not submitted an affidavit." Determining that the trial court's order was ambiguous, this Court requested clarification concerning whether the trial court intended to dismiss Wife's request for attorney's fees. The trial court subsequently entered an order, clarifying that it intended to dismiss Wife's request for attorney's fees because it was unable to determine an amount of attorney's fees incurred.

II. Issues Presented

Husband presents the following issues, which we have restated as follows:

1.      Whether the trial court erred by awarding to Wife what it classified as rehabilitative alimony.

- 6 -

2.      Whether the trial court erred by denying Husband's motion to alter or amend the trial court's judgment and his motion to terminate rehabilitative alimony.

3.      Whether the trial court erred by declining to award to Husband the full value of all marital property allegedly removed from the marital residence while the property remained in the control of Wife.

4.      Whether the trial court erred by declining to modify the permanent parenting plan to designate Husband as primary residential parent.

## III.  Standard of Review

We review a non-jury case *de novo* upon the record with a presumption of correctness as to the findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). We review questions of law *de novo* with no presumption of correctness. *Bowden*, 27 S.W.3d at 916 (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 924 (Tenn. 1998)). The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002).

Marital dissolution agreements are contractual and, once approved by the trial court, "become legally binding obligations on the parties." *Long v. McAllister-Long*, 221 S.W.3d 1, 8-9 (Tenn. Ct. App. 2006), *perm. app. denied* (Tenn. Jan. 29, 2007). However, obligations concerning the two "notable exceptions" of child support and alimony do remain modifiable by the courts. *Id.* at *9 n.7. We review issues of contract interpretation *de novo*. *See Dick Broad. Co. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 659 (Tenn. 2013). As this Court has previously explained:

> In resolving a dispute concerning contract interpretation, our task is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contract language. *Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.*, 78 S.W.3d 885, 889-90 (Tenn. 2002) (citing *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999)). A determination of the intention of the parties "is generally treated as a question of law because the words of the contract are definite and undisputed, and in deciding the legal effect of the words, there is no genuine factual issue left for a jury to decide." *Planters Gin Co.*, 78 S.W.3d at 890 (citing 5 Joseph M. Perillo, *Corbin on Contracts*, § 24.30 (rev. ed. 1998); *Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191,

196 (Tenn. 2001)). The central tenet of contract construction is that the intent of the contracting parties at the time of executing the agreement should govern. *Planters Gin Co.*, 78 S.W.3d at 890. The parties' intent is presumed to be that specifically expressed in the body of the contract. "In other words, the object to be attained in construing a contract is to ascertain the meaning and intent of the parties as expressed in the language used and to give effect to such intent if it does not conflict with any rule of law, good morals, or public policy." *Id.* (quoting 17 Am. Jur. 2d, Contracts, § 245).

*Kafozi v. Windward Cove, LLC*, 184 S.W.3d 693, 698 (Tenn. Ct. App. 2005), *perm. app. denied* (Tenn. Jan. 30, 2006).

Regarding alimony, our Supreme Court has "observ[ed] that trial courts have broad discretion to determine whether spousal support is needed and, if so, the nature, amount, and duration of the award." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011). As to the standard of appellate review applicable when a modification of alimony is at issue, our Supreme Court has explained:

> Because modification of a spousal support award is "factually driven and calls for a careful balancing of numerous factors," *Cranford v. Cranford*, 772 S.W.2d 48, 50 (Tenn. Ct. App. 1989), a trial court's decision to modify support payments is given "wide latitude" within its range of discretion, *see Sannella v. Sannella*, 993 S.W.2d 73, 76 (Tenn. Ct. App. 1999). In particular, the question of "[w]hether there has been a sufficient showing of a substantial and material change of circumstances is in the sound discretion of the trial court." *Watters v. Watters*, 22 S.W.3d 817, 821 (Tenn. Ct. App. 1999) (citations omitted). Accordingly, "[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision unless it is not supported by the evidence or is contrary to the public policies reflected in the applicable statutes." *Kinard v. Kinard*, 986 S.W.2d 220, 234 (Tenn. Ct. App. 1998); *see also Goodman v. Goodman*, 8 S.W.3d 289, 293 (Tenn. Ct. App. 1999) ("As a general matter, we are disinclined to alter a trial court's spousal support decision unless the court manifestly abused its discretion.").

*Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001); *see also Wiser v. Wiser*, No. M2013-02510-COA-R3-CV, 2015 WL 1955367, at *3 (Tenn. Ct. App. Apr. 30, 2015), *perm. app. denied* (Tenn. Sept. 17, 2015).

With respect to a motion to alter or amend, this Court has previously explained that "[w]e review a trial court's denial of a Tenn. R. Civ. P. 59.04 motion to alter or amend a judgment for abuse of discretion." *Robinson v. Currey,* 153 S.W.3d 32, 38

(Tenn. Ct. App. 2004) (quoting *Chambliss v. Stohler,* 124 S.W.3d 116, 120 (Tenn. Ct. App. 2003)).

A trial court's determination regarding child custody and co-parenting is similarly reviewed under an abuse of discretion standard. *See Caldwell v. Hill*, 250 S.W.3d 865, 869 (Tenn. Ct. App. 2007). This Court in *Caldwell* explained:

> The paramount concern in a child custody case is the welfare of the child. *Eldridge v. Eldridge,* 42 S.W.3d 82, 85 (Tenn. 2001). The Supreme Court has noted that "the details of custody and visitation with children are peculiarly within the broad discretion of the trial judge." *Id.* at 85 (quoting *Edwards v. Edwards,* 501 S.W.2d 283, 291 (Tenn. Ct. App. 1973)). Appellate courts will not interfere with a trial court's custody decision unless it is shown that the trial court exercised its discretion in an erroneous manner. *Koch v. Koch,* 874 S.W.2d 571, 575 (Tenn. Ct. App. 1993); *Mimms v. Mimms,* 780 S.W.2d 739, 744-45 (Tenn. Ct. App. 1989).

> Under the abuse of discretion standard, we must uphold the trial court's ruling as long as reasonable minds could disagree about its correctness. *DeLong v. Vanderbilt University,* 186 S.W.3d 506, 511 (Tenn. Ct. App. 2005). According to the Tennessee Supreme Court, "A trial court abuses its discretion only when it applies an incorrect legal standard, or reaches a decision which is against logic or reasoning that causes an injustice to the party complaining." *Eldridge v. Eldridge,* 42 S.W.3d 82, 85 (Tenn. 2001) (internal quotations omitted). Applying this standard, we are not permitted to substitute our judgment for that of the trial court. *Myint v. Allstate Ins. Co.,* 970 S.W.2d 920, 927 (Tenn. 1998).

> * * *

> As the Supreme Court has noted on several occasions, trial courts are vested with wide discretion in matters of child custody. *Eldridge v. Eldridge,* 42 S.W.3d at 85; *Suttles v. Suttles,* 748 S.W.2d 427, 429 (Tenn. 1988). A determination of custody and visitation often hinges on subtle factors such as the parents' demeanor and credibility during the trial proceedings. *Gaskill v. Gaskill,* 936 S.W.2d 626, 631 (Tenn. Ct. App. 1996). Absent some compelling reason otherwise, considerable weight must be given to the trial court's judgment with respect to the parties' credibility and their suitability as custodians of children. *Bush v. Bush,* 684 S.W.2d 89, 94-95 (Tenn. Ct. App. 1984). In cases such as this, the welfare and best interests of the child are of paramount concern. Tenn. Code Ann. § 36-6-106(a); *Koch v. Koch,* 874 S.W.2d at 575.

*Caldwell*, 250 S.W.3d at 869.

In reviewing pleadings, we "must give effect to the substance, rather than the form or terminology of a pleading." *Stewart v. Schofield*, 368 S.W.3d 457, 463 (Tenn. 2012) (citing *Abshure v. Methodist Healthcare-Memphis Hosp.*, 325 S.W.3d 98, 104 (Tenn. 2010)). We note also that pleadings "prepared by pro se litigants untrained in the law should be measured by less stringent standards than those applied to pleadings prepared by lawyers." *Stewart*, 368 S.W.3d at 462 (citing *Carter v. Bell*, 279 S.W.3d 560, 568 (Tenn. 2009); *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003); *Young v. Barrow*, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003)). Parties proceeding without benefit of counsel are "entitled to fair and equal treatment by the courts," but we "must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe." *See Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003).

## IV. Alimony

Husband takes issue with the trial court's classification of the mediated alimony obligation as rehabilitative alimony. Husband contends that the trial court erred by classifying the alimony award as rehabilitative when the mediation agreement made no such classification and no party presented a motion seeking classification. However, our Court has instructed that when the parties fail to identify the type of alimony in their agreement, the trial court should classify the type of alimony awarded for purposes of clarity and future reference. *See Wynns v. Wynns*, No. M2007-00740-COA-R3-CV, 2008 WL 4415786, at *2 n.5 (Tenn. Ct. App. Sept. 26, 2008). Therefore, we determine that the trial court did not err by assigning a classification to the alimony award.

Despite Husband's identification of the issue as whether the trial court erred by classifying the spousal support award as rehabilitative, Husband has also relied on this Court's decision in *Honeycutt v. Honeycutt*, 152 S.W.3d 556 (Tenn. App. Ct. 2003), to support his argument that that his alimony should cease upon Wife's cohabitation with a person of the opposite sex. In the mediation agreement at issue, the parties agreed that Husband would pay to Wife "alimony in the amount of $1200$^{00}$ per month for a period of 42 months" and that the "[a]limony payments shall cease upon Wife's remarriage or cohabitation with opposite sex." Upon careful review, we determine that the trial court erred by failing to terminate Husband's alimony obligation upon Wife's cohabitation with a person of the opposite sex pursuant to the mediation agreement.

In *Honeycutt*, the parties entered into a marital dissolution agreement that provided, *inter alia*, that the husband would pay alimony to the wife "until such time as Wife . . . cohabitates with a man not related to her . . . ." *Id.* at 562 (emphasis omitted).

- 10 -

The marital dissolution agreement further stated that the husband's "obligation to pay alimony shall cease upon the occurrence of any of those events." *Id.* The husband subsequently filed a motion to terminate his alimony obligation based upon the wife's cohabitation with an unrelated male. *Id.* at 558. The trial court in *Honeycutt* determined that the alimony provision in the marital dissolution agreement was ambiguous and should be read in conjunction with other statutory provisions regarding termination of alimony *in futuro*. *Id.* at 562. The trial court thereby interpreted the parties' agreement to require proof of support from a third party before termination of the husband's alimony obligation was triggered under the agreement. *Id.* The trial court subsequently declined to terminate the husband's alimony obligation because the husband did not prove that the wife had received financial support from a third party. *Id.* at 563. The husband in *Honeycutt* appealed the trial court's denial of his motion. *Id.* at 560.

On appeal in *Honeycutt*, this Court applied general contract principles to the parties' marital dissolution agreement, emphasizing that "[a]n MDA is a contract and as such generally is subject to the rules governing construction of contracts." *Id.* at 561 (quoting *Johnson v. Johnson,* 37 S.W.3d 892, 896 (Tenn. 2001)). Concluding that the parties explicitly contracted for and placed into their marital dissolution agreement a condition that the husband's alimony obligation would cease upon the wife's "cohabitation with a man not related to her," this Court determined that the trial court erred by denying the husband's motion to terminate alimony on the basis that he failed to introduce proof that the wife had received financial assistance from a third party. *Id.* at 564. Upon its determination that the wife was cohabitating with a third party based on the evidence in the record, this Court determined that "under the plain language of the parties' [marital dissolution agreement], Husband's alimony obligations are terminated." *Id.* at 566.

Similarly, in the case at bar, Wife and Husband contracted in the mediation agreement that "[a]limony payments shall cease" upon Wife's cohabitation with a person of the opposite sex. In its February 25, 2016 order, the trial court specifically found that Wife had been cohabitating with a person of the opposite sex. The trial court, however, did not terminate Husband's alimony obligation. Instead, the trial court determined that Wife remained the economically disadvantaged spouse as a result of the divorce and continued Husband's alimony obligation, albeit modifying the terms of the alimony upon finding a material change in circumstance. Notably, Wife does not appeal the trial court's finding in the February 25, 2016 order that she was cohabitating with a person of the opposite sex. Applying contract principles to the parties' mediation agreement, we determine that the trial court erred by declining to terminate Husband's alimony obligation upon its determination that Wife was cohabitating with a person of the opposite sex.[1]

---

[1] We note that because the parties' contractual agreement controls on this issue, we have not applied, nor

We note that the trial court did not make a finding regarding when the cohabitation began. However, Wife's cohabitation is first mentioned within the record before us in the trial court's February 25, 2016 order. We further recognize that Wife later admitted that she had begun cohabiting with a person of the opposite sex shortly after the January 28, 2016 hearing. Based on the record before us, we determine that the date of the trial court's February 25, 2016 order is a proper date for termination of Husband's alimony obligation under the mediation agreement. *See Honeycutt*, 152 S.W.3d at 566-567.

Having determined that the trial court erred by failing to terminate Husband's alimony obligation upon a finding that Wife was cohabitating with a person of the opposite sex, we reverse the trial court's judgment enforcing the alimony provision of the mediation agreement. Husband's alimony obligation is terminated effective February 25, 2016. We further conclude that because we have determined that the trial court should have terminated Husband's alimony obligation in its February 25, 2016 order, Husband's issue regarding whether the trial court erred by denying his motion to alter or amend the order regarding the alimony obligation is deemed pretermitted as moot. We note that the record is unclear as to whether Husband had made alimony payments while the mediation agreement was in effect prior to entry of the February 25, 2016 order. On remand, the trial court should make a determination regarding whether Husband owes Wife alimony incurred prior to February 25, 2016, or whether Husband is owed reimbursement of spousal support paid past February 25, 2016.

## V. Removal of Marital Property

Husband contends that the trial court erred by failing to award to Husband the full value of the marital property that he claimed Wife wrongfully removed from the marital home. In his argument on appeal, Husband raises an issue regarding two awards to him concerning marital property. We will address each award in turn.

Husband first challenges the trial court's award to him in its February 25, 2016 order of $350 for welding equipment. According to Husband, the trial court erred by undervaluing the welding equipment when Husband had testified that its value was $2,000. As this Court has explained regarding the trial court's valuation of marital property:

---

have the parties raised an issue regarding, Tennessee's cohabitation statute, now codified at Tennessee Code Annotated § 36-5-121(g)(2)(C) (2017). *See Scherzer v. Scherzer*, No. M2017-00635-COA-R3-CV, 2018 WL 2371749, at *9 (Tenn. Ct. App. May 24, 2018) (concluding that the trial court had properly applied the cohabitation statute when the parties had not included a cohabitation provision in their marital dissolution agreement while noting that "divorcing parties may contract to forego the statutory cohabitation exception to the nonmodifiability of transitional alimony").

The parties themselves must come forward with competent valuation evidence. *Kinard v. Kinard,* 986 S.W.2d 220, 231 (Tenn. Ct. App. 1998); *Wallace v. Wallace,* 733 S.W.2d 102, 107 (Tenn. Ct. App. 1987). When valuation evidence is conflicting, the court may place a value on the property that is within the range of the values represented by all the relevant valuation evidence. *Watters v. Watters,* 959 S.W.2d 585, 589 (Tenn. Ct. App. 1997); *Brock v. Brock,* 941 S.W.2d 896, 902 (Tenn. Ct. App. 1996). Decisions regarding the value of marital property are questions of fact. *Kinard v. Kinard,* 986 S.W.2d at 231. Accordingly, they are entitled to great weight on appeal and will not be second-guessed unless they are not supported by a preponderance of the evidence. *Smith v. Smith,* 93 S.W.3d at 875; *Ray v. Ray,* 916 S.W.2d 469, 470 (Tenn. Ct. App. 1995).

*Owens v. Owens*, 241 S.W.3d 478, 486 (Tenn. Ct. App. 2007).

While Husband testified that Wife had removed the welding equipment from the home and that its value was approximately $2,000, Wife admitted selling the welding equipment for $350 in order to replace the broken washing machine in the residence. Wife further testified that her previous research reflected that the equipment was valued at $400. The trial court awarded to Husband the amount of $350 as compensation for the welding equipment, reflecting the amount for which the equipment had been sold. *See Granoff v. Granoff*, No. E2015-00605-COA-R3-CV, 2016 WL 7786447, at *5 (Tenn. Ct. App. Mar. 16, 2016) ("'[F]air market value' is defined . . . as '[t]he price that a seller is willing to accept and a buyer is willing to pay on the open market and in an arm's-length transaction.'"); *Hampton-Hoover v. Hoover*, No. M1999-01922-COA-R3-CV, 2000 WL 794359, at *4 (Tenn. Ct. App. June 20, 2000) (affirming the trial court's reliance on the sale price of item in determining value of personal property). The trial court's value of $350 falls within the range of values presented by the evidence; therefore, we determine that the evidence does not preponderate against the trial court's valuation of the welding equipment. *See Owens*, 241 S.W.3d at 486.

Husband next claims as error the trial court's subsequent award to him in its June 12, 2017 order of $1,500 as "reimbursement for the stove, refrigerator, etc." According to Husband, several items of property that had been awarded to him in the divorce were missing. Furthermore, he alleged that his truck was damaged when he took possession of the marital home. During the hearing, Husband entered into evidence a list of personal property that he alleged was damaged or missing from the marital home. Included in his list was a built-in stove and refrigerator that had been removed by Wife, along with several tools and a Star Wars movie collection. He also alleged damage to his "project truck." Husband argues that Wife had "exclusive dominion and control" over the marital home from the time of the parties' separation until Husband took possession of the home such that Wife should pay for the missing or damaged items.

During the hearing, Wife admitted that she had removed the stove and refrigerator from the marital residence when she moved, "not thinking that it stayed with the house." According to Wife, she left the original refrigerator that was in the home. Wife further explained that many of the items of property identified as missing by Husband had previously been loaned to Husband's stepson in order to build a treehouse.

Husband additionally testified that he was in the process of restoring a vintage pickup truck, which he referred to as his "project truck." According to Husband, when he returned to the marital home, the truck appeared to have been damaged by use of a ballpeen hammer and the windshield appeared to have been "shot out" by a pellet rifle. He asserted that the damage on the truck was confined to places that he had previously restored. The record contains photographs of alleged damage to the vehicle but contains no evidence, apart from Husband's testimony, regarding whether the damage was intentional or who had caused the damage to the truck.

Husband claimed that the total value of all the missing property and the damage to his truck was $9,335. Following an evidentiary hearing, the trial court awarded to Husband $1,500 as "reimbursement for the stove, refrigerator, etc." in its June 12, 2017 order (emphasis added). The trial court did not specifically address the damage to the vehicle or other missing property. However, the trial court heard testimony regarding Husband's allegations of missing personal property and damage to his truck, considered the list of property submitted by Husband, and then placed a total value of $1,500 thereon.

Moreover, we note that Husband did not include a transcript of the trial court's proceedings in the appellate record. The trial court "adopted and approved" a statement of the evidence, which has been included in the record on appeal. Although the statement of the evidence is detailed regarding much of the testimony that occurred during the proceedings, the statement of the evidence is somewhat limited regarding the specific items of property that Husband alleged were missing from the marital home, the alleged damage to the truck, and the trial court's basis for awarding to Husband $1,500 for those items rather than the requested $9,335. The record before us does reflect, however, that the trial court considered the evidence presented and determined that an award to Husband in the amount of $1,500 was appropriate based on the facts and circumstances in this matter.

We emphasize that it is the appellant's responsibility to provide this Court with a sufficient appellate record with which this Court can conduct a proper review of the trial court proceedings. This Court has explained regarding an insufficient appellate record:

In most situations, the inadequacy of an appellate record will be attributed to the appellant, whose responsibility it is to prepare a record that is adequate for a meaningful appellate review. Tenn. R. App. P. 24(b); *State v. Bunch,* 646 S.W.2d 158, 160 (Tenn. 1983); *McDonald v. Onoh,* 772 S.W.2d 913, 914 (Tenn. Ct. App. 1989). The result is generally that where factual issues are raised, without an appellate record containing the facts, this court cannot perform a *de novo* review or determine the preponderance of the evidence. *Sherrod v. Wix,* 849 S.W.2d 780, 783 (Tenn. Ct. App. 1992). Therefore, in such cases, we usually assume that the record, had it been preserved, would have contained sufficient evidence to support the trial court's factual findings. *Id.; McDonald,* 772 S.W.2d at 914; *Gotten v. Gotten,* 748 S.W.2d 430, 432 (Tenn. Ct. App. 1988); *Irvin v. City of Clarksville,* 767 S.W.2d 649, 653 (Tenn. Ct. App. 1989).

*Tarpley v. Hornyak*, 174 S.W.3d 736, 740 (Tenn. Ct. App. 2004).

The appellate record in this matter reflects Husband's claims of missing and damaged property and Wife's denial of such claims, with the exception of the stove and refrigerator. Recognizing that the trial court's determinations regarding witness credibility are entitled to great weight on appeal, *see Jones*, 92 S.W.3d at 838, we conclude that the appellate record we have been provided precludes our review of where the preponderance of the evidence lies on this issue in any further detail. *See Tarpley*, 174 S.W.3d at 740. Therefore, we affirm the trial court's award to Husband of $1,500 as "reimbursement for the stove, refrigerator, etc."

## VI. Permanent Parenting Plan

Husband contends that the trial court erred by failing to modify the parties' permanent parenting plan to designate Husband as the primary residential parent. According to Husband, the trial court's decision to deny modification of the permanent parenting plan was against the preponderance of the evidence. Upon a careful review of the record, we disagree with Husband and determine that the trial court did not err by declining to modify the parties' mediated agreement, which designated Wife as the primary residential parent. At issue in this matter was an initial custody decision by the trial court designating Wife as the primary residential parent and a subsequent petition to modify the permanent parenting plan filed by Husband.

At the time of a divorce when at least one minor child is involved, as occurred in this case, the trial court must "make a custody determination" "on the basis of the best interest of the child." *See* Tenn. Code Ann. § 36-6-106(a) (Supp. 2016). The court is required to apply statutory "best interest" factors enumerated in Tennessee Code

Annotated § 36-6-106(a) to determine a custody arrangement in the best interest of the Child. Tennessee Code Annotated § 36-6-106(a) provides:

> In a suit for annulment, divorce, separate maintenance, or in any other proceeding requiring the court to make a custody determination regarding a minor child, the determination shall be made on the basis of the best interest of the child. In taking into account the child's best interest, the court shall order a custody arrangement that permits both parents to enjoy the maximum participation possible in the life of the child consistent with the factors set out in this subsection (a), the location of the residences of the parents, the child's need for stability and all other relevant factors. The court shall consider all relevant factors, including the following, where applicable:
>
> (1)    The strength, nature, and stability of the child's relationship with each parent, including whether one (1) parent has performed the majority of parenting responsibilities relating to the daily needs of the child;
>
> (2)    Each parent's or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child. In determining the willingness of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, the court shall consider the likelihood of each parent and caregiver to honor and facilitate court ordered parenting arrangements and rights, and the court shall further consider any history of either parent or any caregiver denying parenting time to either parent in violation of a court order;
>
> (3)    Refusal to attend a court ordered parent education seminar may be considered by the court as a lack of good faith effort in these proceedings;
>
> (4)    The disposition of each parent to provide the child with food, clothing, medical care, education and other necessary care;

(5)     The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities;

(6)     The love, affection, and emotional ties existing between each parent and the child;

(7)     The emotional needs and developmental level of the child;

(8)     The moral, physical, mental and emotional fitness of each parent as it relates to their ability to parent the child. The court may order an examination of a party under Rule 35 of the Tennessee Rules of Civil Procedure and, if necessary for the conduct of the proceedings, order the disclosure of confidential mental health information of a party under § 33-3-105(3). The court order required by § 33-3-105(3) must contain a qualified protective order that limits the dissemination of confidential protected mental health information to the purpose of the litigation pending before the court and provides for the return or destruction of the confidential protected mental health information at the conclusion of the proceedings;

(9)     The child's interaction and interrelationships with siblings, other relatives and step-relatives, and mentors, as well as the child's involvement with the child's physical surroundings, school, or other significant activities;

(10)    The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;

(11)    Evidence of physical or emotional abuse to the child, to the other parent or to any other person. The court shall, where appropriate, refer any issues of abuse to juvenile court for further proceedings;

(12)    The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child;

(13)    The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preference of older children should normally be given greater weight than those of younger children;

(14)    Each parent's employment schedule, and the court may make accommodations consistent with those schedules; and

(15)    Any other factors deemed relevant by the court.

In the case at bar, the parties' December 2014 mediated agreement designated Wife as the primary residential parent and provided Husband with co-parenting time every other weekend and every Thursday evening from 6:00 p.m. until 8:30 p.m. In response to Wife's motion to enforce the mediation agreement, Husband claimed that the mediation agreement was no longer in the best interest of the Child. During a hearing on January 29, 2016, Husband testified that the Child had been left home alone without supervision and food to eat. In support of his allegations, Husband presented text messages from the Child as evidence during trial. Wife denied that she had left the Child alone or unsupervised for an unreasonable amount of time or that she had left the Child without sufficient food.

Additionally, Husband testified that the Child was having difficulty arriving at school promptly due to Wife's "failure to either get her child up on time or make arrangements for him to be taken to school" by another individual in her absence. Husband also offered a letter from the school informing him of the Child's excessive absences. Wife testified that she maintained full-time employment and often relied on her older children, who were ages sixteen and eighteen, to assist her with some supervision of the Child and some transportation to and from school. According to Wife, bus transportation to and from school was not offered by the city school system.

The Child was eleven years old at the time of his testimony during the January 29, 2016 hearing.[2] He testified that he was well cared for while in Wife's custody. The Child denied that he had been left alone while in Wife's care to a point of concern or that he had been otherwise neglected while in Wife's care. The Child acknowledged that there were occasions when Wife would come home late and he would have to prepare his own meals. The Child expressed his desire for his parents to "get along" and his desire to remain in the primary custody of Wife while spending some co-parenting time with Husband.

Wife related that Husband was addicted to prescription drugs and admitted that she had used prescription drugs with him illegally in the past. Wife also testified that Husband had violent propensities and had knocked holes into the walls and ceiling of their home while he had been under the influence of drugs or alcohol. The trial court's statement of the evidence reflects that Wife's older children testified during trial that

---

[2] The record is silent as to whether the Child's testimony occurred *in camera* or in the presence of the parties.

- 18 -

Husband "was always drunk, was verbally abusive, and had physically assaulted them." Wife's older daughter, M.R., testified that Husband had "hit her in the face and body on numerous occasions out of anger and rage" and that she was "scared of him."

Wife's older son, N.R., reported that Husband had "held him by his neck against the wall and choked him out of anger" and that Husband had verbally abused him as well as "physically [hit] him in the head." N.R. recounted an incident when he observed Husband "crushing up a pill to snort into his nostril." Both N.R. and M.R. related a separate incident when they, the Child, and Wife had locked themselves in a bedroom for their safety due to Husband's anger and rage when he ingested alcohol and prescription medication. Wife presented as evidence photographs of holes in the walls and ceiling throughout the marital residence, which she indicated were caused by Husband while under the influence of drugs or alcohol. While Husband denied any drug or alcohol abuse, he acknowledged previously taking pain medication for a work-related injury.

Following the January 29, 2016 hearing, the trial court found in its February 25, 2016 order that it was in the best interest of the Child that Wife be designated as the primary residential parent and that Husband receive visitation every other weekend and every Thursday evening as set forth in the parties' mediation agreement. *See Fletcher v. Fletcher*, No. M2010-01777-COA-R3-CV, 2011 WL 4447903, at *9 (Tenn. Ct. App. Sept. 26, 2011) ("[T]he trial judge cannot simply presume that a mediated parenting plan is in the children's best interest, particularly where . . . it is repudiated by one of the parties prior to being incorporated into a court order. Instead the trial judge must affirmatively ascertain whether it is in their best interest." (citing *Tuetken v. Tuetken*, 320 S.W.3d 262 (Tenn. 2010))). As previously noted, a trial court is vested with broad discretion regarding matters of child custody and its decision will not be reversed absent an abuse of that discretion. *See Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001). Upon a review of the record, we determine that the evidence preponderates in favor of the trial court's finding that the mediated permanent parenting plan was in the best interest of the Child and that the trial court did not abuse its discretion in this regard. Therefore, we affirm the trial court's judgment regarding the initial custody decision.

Following the trial court's initial custody decision, Husband filed a petition to modify the permanent parenting plan, alleging that a material change in circumstance had occurred and requesting that he be named the primary residential parent of the Child rather than Wife. *See Armbrister v. Armbrister,* 414 S.W.3d 685, 703 (Tenn. 2013) (comparing the standard for an action to modify custody to the standard for an action to modify solely a residential parenting schedule). According to Husband's petition, a material change in circumstance had occurred in that the Child had been "continuously left alone, at all hours of the day and night, while at the residence of [Wife] and her present paramour." Husband also alleged that the Child had suffered academically. Husband proposed a modification to the permanent parenting plan in which the trial court

- 19 -

would designate Husband as the primary residential parent and provide Wife with co-parenting time every other weekend. Wife responded to Husband's petition, denying that a material change in circumstance had occurred so as to warrant modification of the permanent parenting plan and requesting that the trial court deny Husband's petition.

Although not raised as an issue by either party, we find it necessary to address the procedural posture of Husband's petition to modify the permanent parenting plan, which was filed while a motion to alter or amend was pending regarding the February 25, 2016 order. Husband alleged a material change in circumstance in his petition to modify the permanent parenting plan. However, a material change in circumstance is not the proper burden of proof for a non-final order of custody. As this Court has previously explained:

> "'The concept of requiring a parent seeking modification to prove a material change in circumstances originated out of this Court's recognition that existing parenting orders are considered *res judicata* on the facts as they existed at the time the most recent order was entered.'" *Stricklin v. Stricklin*, 490 S.W.3d 8, 16 (Tenn. Ct. App. 2015) (quoting *Canada v. Canada*, No. W2014-02005-COA-R3-CV, 2015 WL 5178839, at *6 (Tenn. Ct. App. Sept. 4, 2015)). Accordingly, "[a] custody decision, 'once final,' is *res judicata*" as to the facts in existence when the decision was made. *Kennedy v. Kennedy*, No. M2016-01635-COA-R3-CV, 2017 WL 2713632, at *3 (Tenn. Ct. App. Jun. 23, 2017) (*no perm. app. filed*); *Hawk v. Hawk*, No. E2015-01333-COA-R3-CV, 2016 WL 901518, at *8 (Tenn. Ct. App. Mar. 9, 2016) (*no perm. app. filed*). "Final custody orders" are *res judicata* and cannot be modified absent a material change of circumstance. *Holley v. Ortiz*, No. M2015-01432-COA-R3-CV, 2017 WL 729754, at *8 (Tenn. Ct. App. Feb. 24, 2017) (*no perm. app. filed*). "After a permanent parenting plan has been incorporated into *a final order or decree*, the parties are required to comply with it unless and until it is modified as permitted by law." *C.W.H. v. L.A.S.*, [538] S.W.3d [488], 2017 WL 6462395, at *5 (Tenn. Dec. 19, 2017) (citing *Armbrister v. Armbrister*, 414 S.W.3d 685, 697 (Tenn. 2013)) (emphasis added).

> However, this standard for modifying a custody order does not apply when there is no final custody order in existence and the parties are only operating under a temporary order. *See Dillard v. Jenkins*, No. E2007-00196-COA-R3-CV, 2007 WL 2710017, at *3-4 (Tenn. Ct. App. Sept. 18, 2007). Temporary custody orders are not entitled to the same res judicata protections as a final order. *McClain v. McClain*, No. E2016-01843-COA-R3-CV, [539] S.W.3d [170], 2017 WL 4217166, at *18 (Tenn. Ct. App. Sept. 21, 2017) (*no perm. app. filed*). Similarly, we have held that it was not necessary to show a material change of circumstance where the initial

custody order the parties sought to modify did not become final due to the filing of a motion to alter or amend. *See DuBois v. DuBois*, No. M1999-00330-COA-R3-CV, 2001 WL 401602, at *6 (Tenn. Ct. App. Apr. 23, 2001); *Young v. Young*, No. 01A01-9801-CH-00047, 1998 WL 730188, at *3 (Tenn. Ct. App. Oct. 21, 1998). In those cases, we explained that when the parties sought modification of the non-final custody order through a motion to alter or amend, that situation did not present "a change of custody case" requiring a material change of circumstance. *Id.* Simply put, "the doctrine of res judicata does not apply when the judgment sought to be given res judicata effect is not final." *DuBois*, 2001 WL 401602, at *6 (quoting *Young*, 1998 WL 730188, at *3). As long as the judgment has not become final, the trial court may alter or amend it either on its own motion or at the request of one of the parties, as it may "change its mind" after reconsidering the proof and the applicable law. *Id.* By the same token, we have found the material change of circumstance standard inapplicable where the court's initial custody ruling was only an oral ruling and no final written order had been entered. *See Hughes v. Hughes*, No. M2013-01558-COA-R3-CV, 2014 WL 7181844, at *8 (Tenn. Ct. App. Dec. 16, 2014). However, in *Hughes*, we held that the trial court's application of the modification standard to consider the existence of a material change of circumstance was harmless error because the result, in that case, would have been the same under either analysis. *Id.* at *9.

*In re Samuel P.*, No. W2016-01665-COA-R3-JV, 2018 WL 1046784, at *11 (Tenn. Ct. App. Feb. 23, 2018) (footnote omitted).

In the instant case, the trial court found in its February 25, 2016 order that the mediated permanent parenting plan was in the best interest of the Child. However, the February 25, 2016 order had not become final because Husband filed a motion to alter or amend pursuant to Tennessee Rule of Civil Procedure 59 within thirty days of the trial court's judgment. *See Albert v. Frye*, 145 S.W.3d 526, 528 (Tenn. 2004) ("[C]ertain post-trial motions, such as a motion to alter or amend pursuant to Tennessee Rule of Civil Procedure 59.04, if timely filed, toll commencement of the thirty-day period until an order granting or denying the motion is entered." (citing Tenn. R. App. P. 4(b); *Binkley v. Medling,* 117 S.W.3d 252, 255 (Tenn. 2003))).

Husband's motion to alter or amend was pending when Husband filed his subsequent petition to modify the permanent parenting plan. Because the trial court's February 25, 2016 order determining the mediated permanent parenting plan to be in the best interest of the Child was not a final order due to Husband's pending motion to alter or amend, a material change in circumstance was not required to modify the custody arrangement. *See id.* Consequently, we will review the trial court's denial of Husband's

- 21 -

petition as though it were the initial custody decision in combination with the evidence presented during the previous hearing. *See Young v. Young*, No. 01A01-9801-CH-00047, 1998 WL 730188, at *3 (Tenn. Ct. App. Oct. 21, 1998) ("[A]s long as its judgment has not become final, the trial court may change its mind after reconsidering the proof and the applicable law.").

The trial court heard additional proof on the issue of custody during a hearing conducted on April 17, 2017. By the time of this second hearing, the Child was twelve years old and in the seventh grade. During trial, both Husband and Wife testified that the Child's grades had suffered in certain courses and that the Child had accumulated multiple unexcused tardies at school. Husband presented the Child's attendance records and most recent report card to support his contention that the Child's poor grades and school attendance were due to the parenting of Wife. The record reflects that the Child had been identified as "Tardy Unexcused" on fourteen occasions and had five unexcused absences from school. During trial, Wife acknowledged that several of the occasions when the Child was tardy for school were considered by the school to be unexcused but insisted that the Child's tardiness and absences from school were the result of transportation issues or the Child's illnesses.

We note that much of the evidence presented to the trial court during the second hearing was repetitive of the evidence the trial court considered in the initial custody hearing. Husband claimed in his petition that the situation had worsened since the previous custody hearing, but his testimony reflected in the statement of the evidence is substantially the same, with the exception of his assertion that the Child's grades had suffered and that the Child had five unexcused absences for the current school year. On both occasions, Husband testified that the Child had multiple tardies and had been left alone for extended periods of time while in the care of Wife.

Despite Husband's claim that the Child's grades had suffered, he did not offer into evidence documentation reflecting the Child's previous attendance records or grade reports to establish that the Child's school attendance and grades had deteriorated from previous years. The record before us demonstrates that the Child's grades had declined somewhat over the course of his seventh-grade year in his math and science courses. Wife acknowledged that the Child "had not made the highest grades in certain courses" but stated that the Child had been disciplined for his lower grades and that his grades were improving. Husband proffered no testimony from school personnel or other evidence to demonstrate whether the Child's grades had declined due to his attendance record, because the curriculum had become more difficult toward the end of the semester, or from some other cause.

Husband testified regarding the allegations in his petition that the Child "had also been left unattended on occasions without anything to eat and would request that he bring

- 22 -

him food or ask [Wife] to bring him food when he was without anything to eat." However, Wife explained that the Child "had not been left unsupervised or unattended for any period of time that would be of concern and that the parties' minor son was well cared for and never without food." According to Wife, the Child was able to prepare certain items of food, such as macaroni and cheese, which were always available to him. Again, we note that this allegation was raised and considered by the trial court during the original hearing.

Following the April 17, 2017 hearing, the trial court subsequently entered an order on June 12, 2017, determining that Husband had failed to prove that a material change in circumstance had occurred warranting modification of the permanent parenting plan. The trial court accordingly ordered that the existing permanent parenting plan would remain in effect. Although the trial court utilized an inapplicable modification standard, the error is harmless in this case because, upon a careful review, we determine that the evidence from the second hearing supports the trial court's determination regarding the permanent parenting plan. The statement of the evidence reflects that the proof before the trial court during the second hearing was substantially similar to evidence presented during the first hearing. We note that the "material change in circumstance" language first appeared in Husband's petition. Although the trial court's language in its June 12, 2017 order mirroring Husband's petition is based on an inapplicable standard, we interpret the trial court's order as providing a determination that the initial custody decision continued to be in the best interest of the Child.

We conclude that the language the trial court used in referring to a material change in circumstance is harmless error. Upon a thorough review of the record before us, we cannot determine that the trial court abused its discretion by denying Husband's petition. Therefore, we affirm the trial court's denial of Husband's petition to modify the permanent parenting plan.

V. Conclusion

For the foregoing reasons, we reverse the trial court's judgment continuing Husband's alimony obligation. We affirm the trial court's judgment in all other respects. This case is remanded to the trial court for further proceedings consistent with this opinion and collection of costs assessed below. Costs on appeal are taxed one-half to the appellant, Brent Christopher Dishon, and one-half to the appellee, Lisa Renee Dishon.

_____
THOMAS R. FRIERSON, II, JUDGE